# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| ALLEN WITHERALL,<br><br>Plaintiffs,<br><br>vs.<br><br>DARRELL BELL, et al.,<br><br>Defendants. | CV 17-00038-GF-BMM-JTJ<br><br><br>ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Plaintiff Allen Witherall filed an Amended Complaint against a number of United States Marshals; employees and medical providers at Crossroads Correctional Center (Crossroads) in Shelby, Montana; and employees and medical providers at the Yellowstone County Detention Facility (YCDF) in Billings, Montana. (Doc. 4.) He also filed three Motions for Leave to file a supplement to his Amended Complaint. (Docs. 12, 14, 19.) His first motion for leave to supplement his Amended Complaint will be granted but his second and third motions for leave to supplement will be denied as futile. Mr. Witherall also filed a Motion to Expedite Screening (Doc. 8) which is now moot and a Motion for Preliminary Injunction (Doc. 9) which should be denied.

Mr. Witherall's Amended Complaint fails to state a claim upon which relief may be granted and is subject to dismissal. Mr. Witherall may file a second

1

amended complaint as set forth herein.

## I. INITIAL SCREENING STANDARD

Because Mr. Witherall is a prisoner proceeding in forma pauperis, the Court must review his Amended Complaint under 28 U.S.C. §§ 1915, 1915A. Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A case is malicious if it was filed with the intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed.R.Civ.P. 8(a)(2). This

rule requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. There is a two-step procedure to determine whether a complaint's allegations cross that line. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662. First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id.* at 679, 681. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Id.* (*citing* Fed.R.Civ.P. 8(a)(2)).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

## II. ANALYSIS

### A. Crossroads Defendants

Crossroads is a private prison where Mr. Witherall was incarcerated under an agreement with the United States Marshals between December 14, 2016 to March 15, 2017, April 12, 2017 to July 4, 2017, and from October 18, 2017 to October 24, 2017. Even though the Crossroads' employees are private individuals, Mr. Witherall was in federal custody while incarcerated at Crossroads, therefore the Crossroads Defendants are considered federal actors rather than state actors for purposes of this case. *Pollard v. GEO Group, Inc.*, 607 F.3d 583, 588–89 (9th Cir. 2010), *rev'd on other grounds sub nom. Minneci v. Pollard*, 132

S.Ct. 617 (2012); *see also Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922,

940–41 (1982); *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922

(9th Cir. 2011).

Normally an action for constitutional violations committed by federal actors

can be brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau

of Narcotics*, 403 U.S. 388 (1971). The United States Supreme Court, however,

has made clear that a prisoner cannot assert a *Bivens* claim for damages against

private prison employees. *Minneci,* 132 S.Ct. 617. As such, it is recommended

that all claims against the Crossroads Defendants be dismissed.

### B. YCDF Defendants

From Mr. Witherall's various filings it appears that he was incarcerated at

YCDF for four days beginning on July 8, 2016, for a short period of time in

August 2016, for four days in November 2016, from November 16, 2016 to

December 14, 2016, from March 15, 2017 to April 12, 2017, from July 4, 2017 to

September 15, 2017, from September 27, 2017 to October 12, 2017, and from

October 24, 2017 to present.

He was initially incarcerated at YCDF on state charges but was taken into

federal custody on December 7, 2016. For purposes of this Order, the Court will

presume that Mr. Witherall's claims against the YCDF Defendants arise under §

1983. *See, e.g., Belbachir v. County of McHenry*, 726 F.3d 975, 978 (7th Cir. 2013) (contract between the Federal Bureau of Prisons and a county jail does not automatically transform a state actor into a federal actor). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

For purposes of this Order, the Court will assume that Mr. Witherall was a pretrial detainee up until April 4, 2017 when he was found guilty after a jury trial. *See United States v. Witherall*, Criminal Action No. 16-00012-BLG-SPW, Doc. 36. A pretrial detainee's constitutional rights relative to conditions of confinement are addressed under the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment's prohibition against cruel and unusual punishment applicable to convicted inmates. *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003). Therefore, Mr. Witherall's claims arising prior to April 4, 2017 against the YCDF Defendants will be analyzed as Fourteenth Amendment claims brought pursuant to 42 U.S.C. § 1983. Claims arising after April 4, 2017 against the YCDC defendants arise under the Eighth Amendment but for ease of analysis the Court will utilize the lower Fourteenth Amendment

standard to analyze Mr. Witherall's claims against the YCDF defendants.

In the past, it was assumed that the standard applicable to a pretrial detainee's conditions of confinement claims brought under the Fourteenth Amendment was the same state of mind requirement as an Eighth Amendment violation, i.e., subjective and deliberate indifference to a substantial risk of serious harm. *See Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010). However, that holding was first called into question by the United States Supreme Court in a Fourteenth Amendment excessive force case. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). More recently, the Ninth Circuit extended the *Kingsley* rationale to a Fourteenth Amendment failure-to-protect claim. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). *Castro* did not expressly extend its holding to other Fourteenth Amendment violations and the issue is unsettled. Out of an abundance of caution, however, this Court will analyze Mr. Witherall's claims under the *Castro* objective reasonableness test.

### 1. Count 2: Denial of Medical Care

In accordance with *Kingsley*, 135 S.Ct. 2466 and *Castro*, 833 F.3d 1060, a pretrial detainee's Fourteenth Amendment claim for the denial of medical treatment must be supported by factual allegations which plausibly demonstrate that:

7

> (1) The plaintiff made a request for medical care; (2) The plaintiff had a serious medical need; (3) The defendant did not take reasonable steps to obtain or provide medical care, even though a reasonable officer (or reasonable medical staff) in the circumstances would have appreciated the high degree of risk involved—making the likelihood of harm obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Guerra v. Sweeny*, 2016 WL 5404407, *3 (E.D. Cal. 2016).

Approximately two weeks before Mr. Witherall entered YCDF on July 8, 2016, he was shot by a large caliber pistol at a short range five times in the torso and arm. He suffered a collapsed lung, had his spleen removed, had four entry or exit wounds in his chest, three entry or exit wounds in his arm, had an elbow replacement, and multiple drain tube lacerations. A doctor at the Billings Clinic gave him a prescription for pain medications which he had been taking since he had been shot.

Mr. Witherall was incarcerated at the YCDF for four days beginning on July 8, 2016. During that incarceration, an unknown booking nurse refused to give him the prescribed pain medications he brought with him to YCDF and insisted that he only take Ibuprofen. (Witherall Decl., Doc. 10-1 at 1.) In approximately August 2016, Mr. Witherall was again incarcerated at the YCDF during which time he was given his prescribed Dilaudid medications by a different nurse than the one who denied him his prescribed medications in July 2016. (Id at 2.) In

November 2016, Mr. Witherall was again incarcerated at YCDF for four days during which time he was denied his pain medications by Nurse Vicki. (Id.) In mid-November 2016, he was again incarcerated at YCDF and again denied his pain medications by Nurse Vicki. (Id.) Mr. Witherall informed a number of Deputy Sheriffs that he was being denied his medications during these incarcerations.

The Court finds these allegations insufficient to state a claim for denial of medical care against the YCDF defendants. Mr. Witherall was only incarcerated for short periods of time at YCDF. As such, there has been no showing that any defendant failed to take reasonable steps to obtain or provide medical care, even though a reasonable officer (or reasonable medical staff) in the circumstances would have appreciated the high degree of risk involved—making the likelihood of harm obvious. Mr. Witherall admits he was given Ibuprofen during these time periods and has not alleged sufficient facts to show that it was unreasonable to provide Ibuprofen instead of the prescription medications that Mr. Witherall was requesting. Further, he has made no showing that by not taking such measures, any defendant caused him injuries. A mere delay in treatment, without more, is insufficient to state a claim of deliberate medical indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nevada Bd. of State Prison*

*Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). A plaintiff must show that a delay was harmful, i.e., that the delay caused him a "tangible residual injury." *Stiltner v. Rhay*, 371 F.2d 420, at 421 n. 3 (9th Cir. 1967). Mr. Witherall makes no allegation of a tangible residual injury from any delay in his treatment. Given the short duration of his stays at YCDF, the Court finds that Mr. Witherall failed to allege sufficient facts to establish a denial of medical care at this facility. To the extent Mr. Witherall is able to truthfully additional facts in support of this claim, he may attempt to do so.

In addition, Mr. Witherall has not presented sufficient facts to state a claim against named defendants. He alleges Defendants Linder and Bofto should be held liable because they are responsible for the YCDF. This is insufficient to state a claim for supervisory liability. "[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). But supervising officers cannot be held liable under a respondeat superior theory under section 1983. *Monell*, 436 U.S. at 691-94. That is, a defendant cannot be held liable just because they supervise other employees. Instead, supervising officers can be held liable under § 1983 "only if they play an affirmative part in the alleged deprivation of constitutional

rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987).

A supervisor may be liable: (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a reckless or callous indifference to the rights of others. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

Allegations against supervisors which resemble "bald" and "conclusory" allegations will be recommended for dismissal. *Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012). Allegations that a supervisory defendant had personal knowledge of a constitutional violation will be insufficient without "specific allegations regarding each defendant's purported knowledge" of the violation. *Hydrick*, 669 F.3d at 942.

Mr. Witherall's conclusory allegations that Defendants Linder and Bofto are responsible for all actions at YCDF are insufficient to state a claim for relief. He appears to name these individuals simply because they are supervisors. Although he alleges Sheriff Linder was sent kites regarding this situation is insufficient given the short duration of Mr. Witherall's various incarcerations at YCDF.

11

## 2. Conditions of Confinement

In order to proceed on his other conditions of confinement claims against the YCDF Defendants, Mr. Witherall must allege,

> (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071. With respect to the third element, the defendant's conduct must be "objectively unreasonable." *Id. citing Kingsley*, 135 S.Ct. at 2473). This is a standard that is something "more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

### a. Adequate Meals–Count 4

Mr. Witherall alleges that the meals at YCDF were high in sodium, carbohydrates, and other unhealthy materials. They were prepared by the same company as sells the Commissary, vending machine food, and the 'hot food cart.' He surmises that the company served meals of such poor quality and quantity that prisoners are forced to purchase foods from them at costs of up to 1000% over

what identical products cost in the community just to avoid starvation. He alleges this practice by YCDF appears to violate 'monopoly' laws, price gouging, and possible 'kickback' schemes to jail officials and/or the Sheriff. (Amd. Cmplt., Doc. 7 at 21-22.)

"Adequate food is a basic human need protected by the Eighth Amendment." *Kennan*, 83 F.3d at 1091 (*citing Hoptowit v. Ray*, 682 F.2d at 1246), amended by 135 F.3d 1318 (9th Cir. 1998). "While prison food need not be tasty or esthetically pleasing it must be adequate to maintain health." *Id.*, *quoting LaMaire v. Maass*, 12 F.3d 1444, 1456 (1993); *see also Foster v. Runnels*, 554 F.3d 807, 812–13 (9th Cir. 2009) (prisoner allegation that officials deprived her of 16 meals over a 23–day period, leading to weight loss and dizziness was sufficient to state a claim). "[I]nmates rely on prison officials to provide them with adequate sustenance on a daily basis[,]" and "[t]he repeated and unjustified failure to do so amounts to a serious deprivation." *Foster*, 554 F.3d at 814.

Although Mr. Witherall alleges that the meals served at YCDF were high in fat, sodium, and carbohydrates he does not allege that the meals were inadequate to maintain his health. He does not allege that he suffered any ill consequences as a result of being served the meals at YCDF.

Further, the only Defendants named with regard to the food at YCDF are

13

Sheriff Linder and Captain Bofto and as set forth above, Mr. Witherall failed to set forth sufficient facts to establish that these Defendants can be held liable in their supervisory positions.

Mr. Witherall's allegations regarding the food service at YCDF are insufficient to state a claim as currently plead. Should Mr. Witherall have additional facts to support these claims he may amend this claim.

### b. Unsanitary Conditions

Mr. Witherall alleges he was confined in what he describes as "filthy, unsanitary conditions" while incarcerated at YCDF. He alleges the shower areas were full of black mold and mildew, the vents in the ceilings of the showers were so clogged with black mold that no air could be vented from the showers, that the smell of sewer gas permeated the air throughout the housing unit, and that small black gnats lived and hatched in the open sewer and emerge through the sinks throughout the entire facility. He contends that in one unit there was an open sewer, covered by only a metal grate, which ran the length of the shower area and was only a few feet from the first row of sleeping beds.

He also alleges that "on information and belief," the kitchen and food preparation area were unclean, unsanitary, unhealthy, and food was exposed to contaminants. He admits that the Sheriff or Jail Captain had the jail maintenance

14

staff do a cursory cleaning of the shower areas but the black mold and mildew still clogged the vents and was still evident on all other mentioned areas. He names Defendants Linder and Bofto in this claim.

Mr. Witherall's Amended Complaint fails to contain sufficient factual allegations to suggest that the conditions under which he was confined put him at a substantial risk of serious harm or that the conditions caused him any injuries. As set forth above, Mr. Witherall was held at the YCDF for short period of time. Thus, he cannot establish that he was subjected to these conditions for such a prolonged period of time that it put him at a substantial risk of serious harm.

Further, Mr. Witherall presented no facts sufficient to demonstrate that the alleged conditions were so substantial as to affect his ability to maintain his health. As such, these allegations fail to state a claim upon which relief may be granted. Out of an abundance of caution, Mr. Witherall will be given an opportunity to amend this claim.

### C. U.S. Marshals

Mr. Witherall brings his claims against the USMS defendants pursuant to the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Claims brought against the USMS defendants between December 7, 2016 and April 4, 2017 will be analyzed as Fifth Amendment substantive due process

claims.  Claims arising after April 4, 2017 (the date Mr. Witherall was convicted) will be analyzed under the Eighth Amendment.  The Fourteenth Amendment, however, is not applicable to the federal government or federal action.  *Simpson v. United States*, 342 F.2d 643 n. 1 (7th Cir. 1965); *Ducharme v. Merrill-Nat'l Lab.*, 574 F.2d 1307, 1310 (5th Cir. 1978).

Mr. Witherall's claims against the various United States Marshals arise under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  *Bivens* is the "federal analogue" to § 1983.  *Hartman v. Moore*, 547 U.S. 250, 254, 255 n.2 (2006).  *Bivens* provides for a private cause of action for damages to proceed against federal actors for constitutional torts.  *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (*citing Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)).  Federal actors cannot be sued under § 1983.  "*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."  *Carlson v. Green*, 446 U.S. 14, 18 (1980).  *Bivens* is the "federal analogue" to 42 U.S.C. § 1983.  *Hartman v. Moore*, 547 U.S. 250, 254, 255 n.2 (2006).

In *Bivens*, the Supreme Court recognized an implied cause of action for damages against federal officers for an alleged violation of a citizen's rights under

the Fourth Amendment. *Bivens*, 403 U.S. at 397. After *Bivens*, the Supreme

Court has found a similar cause of action implied against federal actors for alleged

violations of the Cruel and Unusual Punishment clause of the Eighth Amendment.

*Correctional Services Corp. v. Malesko*, 534 U.S. 61, 67-68 (2001) (*citing*

*Carlson v. Green*, 446 U.S. 14 (1980)). However, the United States Supreme

Court recently questioned whether a *Bivens* remedy can be implied in a prisoner

abuse case arising under the Fifth Amendment as opposed to the Eighth

Amendment. *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017). The *Ziglar* case was

remanded on this issue with regard to pretrial detainees claims against a warden

defendant. *c.f. Sell v. United States*, 539 U.S. 166, 193, 123 S.Ct. 2174, 156

L.Ed.2d 197 (2003) (Scalia, J., dissenting) ("[A] [Bivens ] action . . . is available

to federal pretrial detainees challenging the conditions of their confinement"). For

purposes of this Order, the Court will presume that there is an implied right of

action under *Bivens*.

### 1. Count 1: Access to Attorneys

Mr. Witherall first alleges that the USMS violated his rights under the Sixth

and Fourteenth Amendments to have a fair trial, effective assistance of counsel,

due process, and equal protection of the laws when he was housed pre-trial at

Crossroads which was more than 300 miles and more than five hours away from

17

his defense counsel. (Amd. Cmplt, Doc. 7 at 6, 12.) In *Heck v. Humphrey*, 512

U.S. 477, 486-87 (1994), the United States Supreme Court held that,

> in order to recover damages for allegedly unconstitutional conviction
> or imprisonment, or for other harm caused by actions whose
> unlawfulness would render a conviction or sentence invalid, a §1983
> plaintiff must prove that the conviction or sentence has been reversed
> on direct appeal, expunged by executive order, declared invalid by a
> state tribunal authorized to make such determination, or called into
> question by a federal court's issuance of a writ of habeas corpus.

*Heck*, 512 U.S. at 487.

A finding that Mr. Witherall had such inadequate access to his lawyers

during his criminal proceedings that it inhibited his ability to effectively prepare

for trial and resulted in ineffective assistance of counsel would necessarily imply

the invalidity of his conviction. As Mr. Witherall's conviction has not been

reversed, declared invalid, expunged, or called into question, any claims

challenging his conviction or sentence are barred by *Heck*. This is not a defect

which could be cured by amendment. These claims will be recommended for

dismissal in a subsequent order.

## 2. Count 5: Vicarious Liability

Mr. Witherall alleges that since the USMS had custody of Mr. Witherall,

they should be held responsible for the acts, actions, omissions, and deliberate

indifference causing loss, damage or injury to Mr. Witherall when they knew or

18

should have known that the places where they placed Mr. Witherall are and were constitutionally deficient.  (Amd. Cmplt., Doc. 7 at 22.)

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676; *see also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even a pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim).  Thus, Mr. Witherall must present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"  *Iqbal*, 556 U.S. at 678, and describe personal acts by each individual defendant which show a direct causal connection to a violation of specific constitutional rights.  *Taylor v. List*, 880 F.2 1040, 1045 (9th Cir. 1989).

As currently pleaded, Mr. Witherall's Amended Complaint fails to include any factual content to suggest that any USMS Defendant personally participated in, directed, or caused him to suffer any constitutional injury.  Instead, he merely claims that the USMS defendants knew or should have known about alleged constitutional deficiencies.  He does not explain what issue each Defendant was purportedly aware of or how they came about that knowledge.  Nor does he

explain how these Defendants violated his constitutional rights through their "own misconduct." *See Iqbal*, 556 U.S. at 677.

The only Defendant specifically identified with regard to these claims is Darrell Bell who Mr. Witherall seeks to hold liable for failing to post notices in each facility where federal prisoners are held giving information on how to report violations of rights in the facilities where they are held and for failing to take corrective action over the violations set forth herein that have been made known to him. These allegations fail to state a federal claim for relief. Mr. Witherall alleges elsewhere that he reported problems to the USMS. (Doc. 7 at 22.) His other allegations against Mr. Bell are too vague and conclusory to state a claim. He does not indicate what or how Mr. Bell was made aware of alleged violations.

### D.  John Doe Defendants

There are a number of defendants that Mr. Witherall has not specifically identified by name and whom he refers to as "unknown." The Federal Rules of Civil Procedure include no provision "permitting the use of fictitious defendants." *McMillan v. Department of Interior*, 907 F.Supp. 322, 328 (D.Nev. 1995), aff'd, 87 F.3d 1320 (9th Cir. 1996); *see also Fifty Associates v. Prudential Ins. Co.*, 446 F.2d 1187, 1191 (9th Cir. 1970). "As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th

20

Cir. 1980). Nonetheless, a plaintiff must be afforded an opportunity to identify the unknown defendants through discovery, unless it is clear that discovery will not reveal their identities or the complaint must be dismissed for other reasons. *Id.* "While Doe pleading is disfavored, it is not prohibited in federal practice." *Lopes v. Vieira*, 543 F.Supp.2d 1149, 1152 (E.D.Ca. 2008).

When a plaintiff is not able to specifically name a defendant when he files his complaint, he must provide sufficient information to enable the court and his opponents to know whom he is trying to identify. *See Bivens*, 403 U.S. at 390 n. 2 (1971); *Wakefield v. Thompson*, 177 F.3d 1160, 1162 n. 4 (9th Cir. 1999). Mr. Witherall has not provided sufficient information to enable the Court or Defendants to know whom he is trying to identify. He must, however, supply the information necessary to identify the defendants to be served. *See Walker v. Sumner*, 14 F.3d 1415 (9th Cir. 1994). Should Mr. Witherall learn the identities of parties he wishes to serve, he must promptly move pursuant to Rule 15 of the Federal Rules of Civil Procedure to amend his complaint to add them as defendants. *See Brass v. County of Los Angeles*, 328 F.3d 1192, 1197–98 (9th Cir. 2003).

## III.  MOTION FOR PRELIMINARY INJUNCTION (Doc. 9)

Mr. Witherall seeks a preliminary injunction requiring defendants to provide

him with effective medications to treat his chronic pain. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter* v. *Natural Resources Defense Council, Inc.,* 555 U.S. 7, 24 (2008) (citations omitted). It serves not as a preliminary adjudication on the merits, but as a tool to preserve the status quo and prevent irreparable loss of rights before judgment. *Textile Unlimited, Inc.* v. *A. BMH & Co., Inc.,* 240 F.3d 781, 786 (9th Cir. 2001). In reviewing a motion for preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citations and internal quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted).

*Winter* does not expressly prohibit use of a "sliding scale approach to preliminary injunctions" whereby "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies* v. *Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011). The Ninth Circuit recognizes one such "approach under

which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *Id.* (citations, internal quotation marks omitted).

A preliminary injunction "should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Lopez* v. *Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012) (citations omitted, emphasis in original). A request for a mandatory injunction seeking relief well beyond the status quo is disfavored and shall not be granted unless the facts and law clearly favor the moving party. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319–20 (9th Cir. 1994).

As set forth herein, Mr. Witherall failed to state a claim with regard to the denial of his pain medications and thus has not provided sufficient evidence to demonstrate that he is likely to succeed on the merits of his claims or that he is likely to suffer irreparable harm. The motion for preliminary injunction should be denied.

## IV.  MOTIONS TO SUPPLEMENT

Mr. Witherall has filed three motions to supplement his Amended Complaint which have been construed as motions to amend. Federal Rule of Civil Procedure 15 governs amendments to pleadings generally. Although leave to amend a deficient complaint shall be freely given when justice so requires,

Fed.R.Civ.P. 15(a), leave may be denied if amendment of the complaint would be futile. *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988). A proposed amended complaint is futile if it would be immediately "subject to dismissal" pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim on which relief may be granted, accepting all of the facts alleged as true. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

In his first and third motions to supplement, Mr. Witherall seeks to add claims against employees of Crossroads Correctional Center. (Docs. 12, 19.) As set forth above, Mr. Witherall cannot bring a *Bivens* claim against employees of a private prison based upon *Minneci v. Pollard*, 132 S.Ct. 617 (2012). As such, these motions to supplement should be denied as futile.

The Court will grant the second motion to supplement and has considered the claims alleged in that supplement herein.

## V. CONCLUSION

Mr. Witherall's claims fail to state a federal claim upon which relief may be granted. His claims against Defendants Douglas Fender, Sarah Phipps, William Crane, William Pearson, Unknown Crossroads Health Services Administrator, Peter Mulner, Chief of Security Madrid, Corrections Officer Faque, Unit Manager Hodges, Nurse Hanson, former Health and Services Administrator Rawls fail to

24

state a federal claim for relief based upon *Minneci v. Pollard*, 132 S.Ct. 617 (2012). This includes Mr. Witherall's medical care claims alleged against the Crossroads Defendants in Count 2, his sleep deprivation claims alleged in Count 3, and his unhealthy meals claims against these Defendants in Count 4. Similarly, Mr. Witherall's claim regarding access to his attorney as set forth in Count 1 is barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). These are not defects which could be cured by the allegation of additional facts. These claims are recommended for dismissal.

Mr. Witherall's denial of medical claims against the YCDF defendants (Count 2), his conditions of confinement claims (meals, sanitation) (Count 4, August 28, 2017 Supplement (Doc. 14)), and his vicarious liability claims against the USMS Defendants (Count 5) also fail to state a claim. It may be possible to cure the defects with these claims as discussed herein. Therefore, out of an abundance of caution, the Court will allow Mr. Witherall to amend these claims.

### A. Second Amended Complaint

Any second amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original complaints by reference. Once Mr. Witherall files a second amended complaint, it replaces the original complaints, and the original complaints no longer serve a

function in the case. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). If Mr. Witherall fails to use the court-approved form, the Court may strike the second amended complaint and recommend the dismissal of this action. Mr. Witherall may not change the nature of this suit by adding new, unrelated claims in his second amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Mr. Witherall is also advised that it is inappropriate to attach exhibits to a complaint. *See* Fed.R.Civ.P. 8. The Court cannot serve as a repository for the parties' evidence. Originals or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) should not be submitted until the course of litigation brings the evidence into question (for example, on a motion for summary judgment, at trial, or when requested by the Court). At this point, the submission of evidence is premature as Mr. Witherall is only required to state a prima facie claim for relief. Thus, in filing a second amended complaint, Mr. Witherall should simply state the facts upon which he alleges a defendant has violated his constitutional rights and refrain from submitting exhibits.

Any second amended complaint must consist of short, plain statements telling the Court: (1) the rights Mr. Witherall believes were violated; (2) the name of the defendant(s) who violated the rights; (3) exactly what <u>each</u> defendant did or

failed to do; (4) how the action or inaction of that defendant is connected to the violation of Mr. Witherall's rights; (5) when the alleged actions took place; and (6) what injury Mr. Witherall suffered because of that defendant's conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Mr. Witherall must repeat this process for each named defendant. Conclusory statements are not enough, nor are declarations that all defendants violated some law or statute. Instead, Mr. Witherall must provide specific factual allegations for each element of each of his claims and must state with specificity to which defendants each of his claims apply. If Mr. Witherall fails to affirmatively link the conduct of a defendant with an injury suffered, the allegation against that defendant will be dismissed for failure to state a claim.

## B. Possible "Strike"

If Mr. Witherall's second amended complaint fails to state a claim upon which relief may be granted, the dismissal could count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g). Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious,

or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

### C. Possible Dismissal

If Mr. Witherall fails to timely comply with every provision of this Order, this action may be dismissed. *Ferdik*, 963 F.2d at 1260-61 (court may dismiss an action for failure to comply with any order of the court).

### D. Address Change

At all times during the pendency of this action, Mr. Witherall must immediately advise the Court of any change of address and its effective date. Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Based upon the foregoing, the Court issues the following:

## ORDER

1. Mr. Witherall may file a second amended complaint on or before November 30, 2017 with regard to the following claims: denial of medical claims against the YCDF defendants (Count 2), conditions of confinement claims (meals, sanitation) (Count 4, August 28, 2017 Supplement (Doc. 14)), and vicarious liability claims against the USMS Defendants (Count 5).

2. Mr. Witherall's Motion to Expedite (Doc. 8) is MOOT.

3.  Mr. Witherall's Motion to Supplement (Doc. 14) is GRANTED.

Further the Court issues the following:

## RECOMMENDATIONS

1.  Mr. Witherall's Motion for Preliminary Injunction (Doc. 9) should be DENIED.

2.  Mr. Witherall's Motion to Supplement (Doc. 12) should be DENIED as futile based upon *Minneci v. Pollard*, 132 S.Ct. 617 (2012).

3.  Mr. Witherall's Motion to Supplement (Doc. 19) should be DENIED as futile based upon *Minneci v. Pollard*, 132 S.Ct. 617 (2012).

4.  Mr. Witherall's claims against Defendants Douglas Fender, Sarah Phipps, William Crane, William Pearson, Unknown Crossroads Health Services Administrator, Peter Mulner, Chief of Security Madrid, Corrections Officer Faque, Unit Manager Hodges, Nurse Hanson, Former Health and Services Administrator Rawls, and Nurse Gribble should be DISMISSED based upon *Minneci v. Pollard*, 132 S.Ct. 617 (2012) including his medical care claims alleged against these Crossroads Defendants raised in Count 2, his sleep deprivation claims alleged in Count 3, his unhealthy meals claims alleged against these Defendants in Count 4.

5.  Mr. Witherall's claim regarding access to his attorney as set forth in Count 1 are barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477

(1994) and should be DISMISSED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Witherall may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[1]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 6th day of November, 2017.


  */s/ John Johnston*
John Johnston
United States Magistrate Judge

---

[1]Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since Mr. Witherall is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.